UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEN MARK ALDRICH,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:13-CV-00401-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION  FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos. 15, 16.  Attorney Dana C. Madsen represents Plaintiff; Special Assistant United States Attorney Summer Stinson represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge. ECF No. 8.  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On November 29, 2010, Plaintiff filed a Title II and a Title XVI application for a period of disability and disability insurance benefits, alleging in both applications disability beginning December 31, 2004.  Tr. 17; 235.  Plaintiff indicated that he was unable to work due to back and hip problems, headaches, depression, anxiety, skin condition, knee problems and high blood pressure.  Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

228.  The claim was denied initially, denied upon reconsideration, and Plaintiff subsequently requested a hearing.  Tr. 147-66.  On July 11, 2012, ALJ Marie Palachuk presided over an administrative hearing, at which medical expert Samuel Landau, M.D., Jay Toews, Ph.D., vocational expert Jinnie Lawson, and Plaintiff, who was represented by counsel, testified.  Tr. 36-91.  The ALJ denied Plaintiff's claim on August 17, 2010.  Tr. 17-30.  The Appeals Council declined review.  Tr. 1-3.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here.  At the time of the hearing, Plaintiff was 52 years old, lived alone and twice-divorced.  Tr. 367.  Plaintiff graduated from high school, and his last job was working part-time, recovering refrigerant.  Tr. 62-63.

Plaintiff testified that his hip and back caused him pain along his sciatic nerve.  Tr. 64.  He also said he experiences headaches daily.  Tr. 66-67.  Plaintiff explained that if his leg is throbbing, he takes codeine which reduces his pain to a "one" on a scale of one to ten.  Tr. 69.  Plaintiff added that the codeine tends to put him in a stupor, and makes it hard for him to sleep at night.  Tr. 69.  Plaintiff also reported that he is depressed, and he cannot separate out his depression symptoms from his physical pain symptoms.  Tr. 68.

Plaintiff also testified that he spends much of his day lying down, but he also washes dishes and clothing, listens to the radio, watches television and cooks dinner.  Tr. 71.  He said he has no hobbies.  Tr. 72.  Plaintiff said he shops for groceries once per week.  Tr. 74.  He reported that he can walk for about 50 yards before he has to stop and rest.  Tr. 75.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971).* If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that

(1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2004, the alleged onset date. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbosacral spine, right hip labral fraying, history of broad-based tear of the posterior horn and medial meniscus of the right knee and history of left knee torn meniscus, status post arthroscopic surgery bilateral knees, headaches; and adjustment disorder with anxiety and depression secondary to chronic pain. Tr. 19-20. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (20 C.F.R. §§ 416.929(d), 416.925 and 416.926). Tr. 20. The ALJ concluded that Plaintiff has the residual functional capacity to perform light work, with some exertional and non-exertional limitations that included:

> The claimant is able to understand, remember, and carry out simple, routine, and repetitive tasks and instructions. Although his concentration, persistence, and pace might wax and wane, he would be able to maintain such for two hour intervals between regularly scheduled breaks. His interaction with the general public should be limited to occasional and he can have superficial (non-collaborative) interaction with co-workers.

Tr. 21. The ALJ found that Plaintiff is incapable of performing past relevant work. Tr. 28. The ALJ concluded that considering Plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the

national economy that Plaintiff can perform, such as storage rental clerk, bakery conveyor-line worker, and fruit sorter. Tr. 29. As a result, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 30.

## ISSUES

Plaintiff contends that the ALJ erred by (1) finding he was not credible; (2) improperly weighing the medical evidence; and (3) rejecting GAF scores from multiple providers. ECF No. 15 at 11-15.

**A.    Credibility**

Plaintiff attacks several of the reasons the ALJ used in finding Plaintiff was not credible. ECF No. 15 at 11-12.

In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an underlying "impairment," and show that the impairment, or a combination of impairments, could reasonably be expected to produce pain or other symptoms. *Smolen,* 80 F.3d at 1281-82; *see Cotton v. Bowen,* 799 F.2d 1403, 1405 (9th Cir. 1986). If this test is satisfied, and if no evidence exists of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1284. "[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner,* 452 F.2d 855 n.7 (9th Cir. 1971). However, if malingering is established, the adjudicator is not bound by the "clear and convincing standard. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In determining a claimant's credibility, an ALJ may consider, among other factors, inconsistencies between the claimant's testimony and the claimant's daily activities, conduct and/or work record. *Light v. Social Sec. Admin.*, 119 F.3d 789,

792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

In this case, the ALJ found that Plaintiff had little credibility. The ALJ provided an extensive discussion of the reasons supporting the negative credibility conclusion. Tr. 23-25.

**1.     Lack of Treatment**

Plaintiff complains that the ALJ failed to examine Plaintiff's reasons for not obtaining treatment, and erred by simply inferring that the lack of treatment meant Plaintiff's symptoms were not as severe as he claimed. ECF No. 15 at 11. In assessing a claimant's credibility, the ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (quoting *Smolen*, 80 F.3d at 1284). Moreover, a claimant's failure to assert a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

One of the bases for the negative credibility finding was Plaintiff's failure to seek "the type of treatment [for] his physical impairments one would expect for a totally disabled individual." Tr. 23. Plaintiff argues that the ALJ should have considered that Plaintiff's mental impairments caused him to isolate himself and avoid leaving his home, and thus he was unable to seek treatment. ECF No. 15 at 11.

However, the ALJ found that the record did not support Plaintiff's allegations of disabling depression. Tr. 25. The ALJ noted that the record revealed a pattern wherein Plaintiff reported severe depression around the time of disability assessments, and after the assessments, his depression improved until the next disability assessment. Tr. 25. For example, on December 9, 2010, Plaintiff

presented for a Psychological Evaluation, and he reported continued suicidal ideation, hearing voices, he had a flat affect, he was unable to describe any activity that brings him pleasure, and he reported constant worry and pessimism). By contrast, less than two weeks later, on December 20, 2010, Plaintiff was examined by Dr. Maeda, who noted Plaintiff was smiling more, appeared less negative, was looking forward to reading a new book, his appetite was good, and Plaintiff appeared "much improved!" Tr. 329. The ALJ cited several similar examples in the record that support the conclusion that Plaintiff's symptoms appeared magnified when he was examined in connection with the disability process. As a result, Plaintiff's explanation that he was unable to seek treatment due to constant disabling psychological limitations is not persuasive.

### 2.  Other source opinion

Also, Plaintiff argues that the credibility assessment is flawed because the ALJ relied upon notes from a physical therapist, an unacceptable medical source ECF No. 15 at 11.

On January 12, 2012, physical therapist Violet Eberly, PT, DPT, noted that Plaintiff had an incident of "writhing pain with his hamstring stretching in which he grabbed his abdomen and began jumping around, throwing himself on the mat with complaints of a muscle that was popping out of his abdomen." Tr. 476. He reported that the pain stopped, and he was able to complete the rest of his exercises. Tr. 476. Ms. Eberly concluded, "Patient with hyper-exaggerated reports of pain today." Tr. 476.

In analyzing Plaintiff's credibility related to pain complaints, the ALJ noted that physical therapy chart notes revealed Plaintiff "had hyper-exaggerated reports of pain, throwing himself on the floor." Tr. 24. The ALJ also relied upon the physical therapists' notes in determining Plaintiff's physical functional abilities. Tr. 24.

In a disability proceeding, the ALJ must consider the opinions of acceptable

medical sources. 20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96-2p; S.S.R. 96-6p. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).

The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. Because an ALJ is required to review evidence from "other sources," Plaintiff's argument that the ALJ erred by considering chart notes from the physical therapist fails.

### 3.    Support in the Record

Finally, Plaintiff argues that some of the ALJ's credibility findings are not supported by the record. Plaintiff also argues that the record does not support the ALJ's findings relating to Plaintiff's ability to concentrate despite pain, evidence of malingering, his activities of daily living, and whether Plaintiff's medication made him alert or sleepy. ECF No. 15 at 12.

Plaintiff argues that the ALJ misinterpreted medical notes from Dr. Thompson related to Plaintiff's ability to concentrate, despite his pain. ECF No. 15 at 11. The ALJ discussed Plaintiff's various reports of pain levels, and noted that during an April 12, 2011, exam with Renee Thompson, Psy.D., Plaintiff estimated his pain was a 40 out of 100. Tr. 24. The ALJ noted, "Dr. Thompson stated this confirms he is able to overcome his pain focus and participate in evaluation," which was copied directly from Dr. Thompson's report. Tr. 24; 367. The ALJ's recitation of the chart note is accurate, and thus the record supports the ALJ's conclusion.

Plaintiff also argues that the record does not support the ALJ's conclusion that the timing of his depression symptom exacerbation was suspicious. ECF No.

15 at 11-12.  First, Plaintiff contends that the ALJ "completely ignored" counseling records, but contrary to Plaintiff's allegation, the ALJ provided an extensive discussion, with citation to the record, detailing Plaintiff's psychological treatment. Tr. 25.

Also, Plaintiff asserts that no evidence exists of malingering, citing the examination note from Rene Thompson, Psy.D.: "[n]o evidence of malingering or factitious behavior is evident though pain-related behavior is not observed during this evaluation."  Tr. 368.   However, the ALJ relied upon that same examination in which Dr. Thompson opined that Plaintiff was "evasive with sparse responses when responding to questions regarding mental health symptoms."  Tr. 369.  Also, Dr. Thompson concluded Plaintiff "acts as if he does not wish to disclose information."  Tr. 371.  The record supports the ALJ's findings and Plaintiff's alternative interpretation of the record is not persuasive.

Next, Plaintiff argues that the record does not support the ALJ's findings about Plaintiff's daily activities.  ECF No. 15 at 12.  Plaintiff argues that he hauled water only in an emergency, and his helping with an appliance repair business in exchange for room and board was irrelevant and thus not properly considered by the ALJ.  ECF No. 15 at 12.

As part of the credibility analysis, the ALJ cited several inconsistencies in Plaintiff's assertions about his limitations.  Tr. 26.  For example, the ALJ noted that Plaintiff said he could not carry grocery bags, yet Plaintiff told his physician that the day prior he not only grocery shopped, he also carried four gallons of water because he had no running water, and he cleaned fifteen pounds of laundry. Tr. 26; 401.  During that visit, James Maeda, M.D., noted Plaintiff had a normal gait, full range of movement at the waist, and his hips, and his motor strength, reflexes and sensations were normal, although he was mildly tender over his right buttock.  Tr. 401.  While Plaintiff contended he could not perform such activities, when he did, the subsequent physician visit did not reveal objective medical signs

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

or symptoms that indicated Plaintiff had suffered severe consequences. The ALJ's interpretation is supported by the record.

Also, the ALJ cited Plaintiff's assertion that he had stopped working three years prior to the hearing. Tr. 26. The ALJ pointed out the record revealed Plaintiff told John Brucklier, M.S.W., on November 1, 2010, that his "boss" told him to "produce or get out." Tr. 26; 294. The ALJ acknowledged it was not clear the number of hours per day or per week that Plaintiff was working. Tr. 26. Also, the ALJ noted Plaintiff worked by assisting in an appliance repair business. Tr. 26. The ALJ concluded, based upon these facts, that Plaintiff was capable of performing activities of a higher level than he alleged in his testimony. Tr. 26.

Plaintiff argued that the Vocational Expert (VE) testified that this work was not relevant. ECF No. 15 at 12. However, the ALJ cited these facts as additional examples of Plaintiff's inconsistencies, not as evidence of his relevant past work, and thus the VE testimony about the "relevancy" of the work is immaterial. This finding is supported by the record.

Finally, Plaintiff argued that the record did not support the ALJ's findings that Plaintiff provided inconsistent responses about the side effects of his medication. ECF No. 15 at 12. The ALJ concluded that contrary to Plaintiff's "testimony that his medications made him fall asleep," Plaintiff told Dr. Maeda in late 2010 that his new anti-depressant medication helped him stay awake longer. Tr. 25. The record referenced by the ALJ was dated December 10, 2010,[1] and noted that since Plaintiff began taking anti-depression medication Sertraline, Plaintiff reported he was able to stay awake later and was looking forward to reading a new cowboy book. Tr. 329.

At the hearing, Plaintiff indicated that when he takes ibuprofen for

---

[1]The ALJ erroneously stated that the examination was conducted in September 2010. Tr. 25.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

headaches, it puts him to sleep. Tr. 66-67. By contrast, Plaintiff testified that when he takes codeine for his sciatica pain, the medication does not affect him much during the day, but keeps him awake at night. Tr. 69. Plaintiff denied that codeine makes him sleepy or groggy. Tr. 70. Thus, the record supports the fact that some medications make Plaintiff sleepy and some medications allow him to stay awake. Plaintiff is correct that these isolated facts do not establish an inconsistency. However, this error is harmless because specific, legitimate reasons supported by substantial evidence sustain the remaining reasons for discounting Plaintiff's credibility. *Batson*, 359 F.3d at 1197 (finding error to be harmless because it did not negate the validity of the ALJ's ultimate conclusion, which was still supported by substantial evidence, and because the ALJ provided other specific and legitimate reasons for discrediting Plaintiff's testimony). Thus, ALJ's findings related to Plaintiff's credibility are supported by substantial evidence in the record.

**B.     Medical Opinions**

Plaintiff argues that the ALJ erred in weighing opinions from six medical sources. ECF No. 15 at 13-16. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Similarly, an examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. *Id.* When a conflict exists between the opinions of a treating physician and an examining physician, the ALJ may disregard the opinion of the treating physician only if he sets forth "specific and legitimate

reasons supported by substantial evidence in the record for doing so." *Id.*

### 1. Samuel Landau, M.D.

Plaintiff contends that the ALJ erred as a matter of law by relying upon an assessment of Plaintiff's RFC from a non-examining, consultant physician, Samuel Landau, M.D. ECF No. 15 at 13. Plaintiff relies upon *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993). In *Penny*, the court found that the ALJ erred by relying solely on a non-examining physician's opinion, where the physician reviewed only a portion of the records and did not hear Plaintiff talk about this pain. *Id.*

In this case, unlike the *Penny* case, the ALJ did not solely rely upon the opinion of testifying Dr. Landau in determining Plaintiff's RFC, and instead gave varying weight, as explained in detail in the ALJ's decision, to the opinions of Plaintiff's treating physician, treating mental health provider, and examining physicians. See Tr. 26-28. As such, *Penny* is not applicable, and the ALJ did not err on this basis.

### 2. James Madea, M.D.

Plaintiff argues that while the ALJ gave significant weight to Dr. Maeda's opinion, the RFC did not include his opinion that Plaintiff was limited to lifting 15 pounds occasionally. ECF No. 15 at 13.

On September 21, 2010, James Maeda, M.D., completed a DSHS Functional Assessment form. Tr. 305-06. In that form, Dr. Maeda indicated that Plaintiff could lift 20 pounds occasionally and five to ten pounds frequently. Tr. 305. On May 4, 2011, Dr. Maeda completed a second DSHS Functional Assessment form in which he indicated that Plaintiff could lift 15 pounds occasionally and five pounds frequently. Tr. 425. Dr. Maeda provided a handwritten notation: "above these designated weight limits, [patient] states aggravation of low back [and right] hip pain." Tr. 425.

The ALJ found that the amended 15-pound restrictions were based upon Plaintiff's self-report, and no evidence existed that Plaintiff's condition

deteriorated between September 2010 and May 2011 in such a way as to justify the greater restriction. Tr. 27.

A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). In this case, Dr. Maeda explained the weight restriction as based upon Plaintiff's self-report. The ALJ properly discounted Plaintiff's credibility and, thus, properly rejected the lifting limitation of 15 pounds. Moreover, Plaintiff fails to cite evidence in the record that indicate his condition deteriorated between September 2010 and May 2011 that justified the decrease in Plaintiff's ability to lift. Thus, the ALJ properly provided specific and legitimate reasons, supported by the record for rejecting Dr. Maeda's amended lifting restriction.

### 3. Renee Thompson, Psy.D.

Plaintiff argues that the ALJ gave significant weight to Dr. Thompson's opinion, but erred by failing to incorporate Plaintiff's limitation in interacting with supervisors. ECF No. 15 at 13.

As noted above, on April 12, 2011, Renee Thompson, Psy.D., examined Plaintiff and produced a narrative report. Tr. 367-71. Dr. Thompson opined that Plaintiff was capable of understanding, remembering and carrying out simple work related instructions. Tr. 371. Dr. Thompson also opined that Plaintiff "would have difficulty interacting in a work setting with coworkers and supervisors." Tr. 371.

The ALJ gave Dr. Thompson's evaluation significant weight, with the exception of the limitation related to coworkers and supervisors. Tr. 27. The ALJ rejected those limitations, and explained the record did not support the restriction, and the ALJ cited particular circumstances of problems with supervisors that were limited to the facts and did not evince a pattern of problems. Tr. 27.

An ALJ may discredit physicians' opinions that are unsupported by the record as a whole, or by objective medical findings. *Batson*, 359 F.3d at 1195. In

this case, as the ALJ found, Plaintiff's difficulty with one boss was a result of the boss behaving in an abusive manner, not problems that originated with Plaintiff. Tr. 296. Also, the record supports the ALJ's conclusion that Plaintiff's problem experienced with a supervisor was readily resolved. Tr. 77. In the absence of evidence supporting Dr. Thompson's assessed limitation, the ALJ properly rejected the assessed limitation related to Plaintiff's ability to work with a supervisor. The ALJ's conclusion that Plaintiff does not have limitations related to supervisors is a reasonable interpretation of the evidence. The finding will not be disturbed. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (court upholds ALJ's decision where the evidence is susceptible to more than one rational interpretation).

### 4.    John Brucklier, MSW, MHP

Plaintiff contends that the ALJ erred by giving significant weight to Mr. Brucklier's opinion, but failing to incorporate his opinion that Plaintiff's severe mental health symptoms would significantly impact his ability to work. ECF No. 15 at 14.

John Brucklier, MSW, MHP, completed a Psychological/Psychiatric Evaluation form on December 9, 2010. Tr. 313-16. Mr. Brucklier noted that he reviewed Plaintiff's mental health records and he spoke on the telephone with Plaintiff's primary physician. Tr. 313. Mr. Brucklier found that Plaintiff's ability to perform basic work-related activities was severely affected by fatigue, hopelessness, sadness and worry. Tr. 314. He also found that Plaintiff's ability to perform work tasks was markedly affected by psychosis and indecisiveness. Tr. 314.

However, in the check-the-box assessment, Mr. Brucklier estimated that Plaintiff had no more than mild limitations in all cognitive and social factors related to Plaintiff's ability to perform a normal workday. Tr. 315. Mr. Brucklier concluded, "the client is capable of living a simple life, with limited stress and

physical demands." Tr. 315.  At that time, Plaintiff had recently started to take psychotropic medication and the effects were not yet established.  Tr. 316.

The ALJ gave great weight to Mr. Brucklier's opinion that indicated Plaintiff had no more than mild functional limitations.  Tr. 27-28.  The ALJ found that this assessment was consistent with other reports from that time that revealed Plaintiff's depression was improving and under control.  Tr. 27-28.

Mr. Brucklier's Psychological/Psychiatric Evaluation form contains contradictory assessments of Plaintiff's limitations. In one part of the form, he indicates Plaintiff's fatigue, hopelessness, sadness and worry will severely affect Plaintiff's ability to work, and yet he also found Plaintiff had no significant interference in cognitive and social impairments in performing a normal work day from his diagnosed conditions.  Tr. 314-15.  Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.  *Thomas*, 278 F.3d at 954.  In this case, the ALJ resolved the ambiguity by relying upon the assessment that indicates Plaintiff will have no significant interference from cognitive and social impairments in performing a workday.  The ALJ's notation that this assessment was consistent with other medical records from the same time period is supported by the record.  Tr. 329; 392-95.  As a result, the ALJ did not err.

### 5. Ron Casebeer, M.Ed.

Plaintiff argues that the ALJ erred by giving little weight to the opinions from Ron Casebeer, M.Ed., on the basis that it was inconsistent with treating physician Dr. Maeda's opinion.  Plaintiff contends that Mr. Casebeer's opinion was entitled to more weight because Mr. Casebeer is a specialist, and Dr. Maeda's opinion was not detailed.  ECF No. 15 at 14.

On June 9, 2011, Mr. Casebeer completed a Psychological/Psychiatric Evaluation, in which he opined that Plaintiff was severely impaired in his ability to understand, remember and persist in tasks following simple instructions.  Tr. 429.

Mr. Casebeer also found that Plaintiff was markedly impaired in his ability to perform routine tasks without undue supervision. Tr. 429. He diagnosed Plaintiff with major depressive disorder, recurrent, severe. Tr. 429.

The ALJ gave little weight to the opinion of Mr. Casebeer. Tr. 28. The ALJ explained that Mr. Casebeer is not Plaintiff's treating mental health provider, and as a result, he does not have a history with Plaintiff. Tr. 28. The ALJ also noted that Mr. Casebeer's opinion was inconsistent with Dr. Maeda's assessment that Plaintiff's depression improved by June, 2011. Tr. 28.

The regulations permit an ALJ to give more weight to the opinion of a specialist in the relevant area. See 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (an opinion concerning mental impairments by a psychiatrist was entitled to greater weight than the opinion of a physician assistant). However, the treating physician's opinion may outweigh the opinion of an examining or non-examining specialist:

> The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment. This is particularly true … where the parts of the functional restrictions arising from the claimant's physical impairments cannot be separated from the parts arising from his mental impairments.

*Lester,* 81 F.3d at 833. Thus, contrary to Plaintiff's suggestion, the ALJ was not required to give more weight to the opinion from a one-time examiner, than to the opinion from Plaintiff's treating physician.

Moreover, the record supports the ALJ's conclusion that, according to Dr. Maeda's records, Plaintiff's depression improved by this time. See Tr. 393-95. As

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

a result, the ALJ did not err in weighing the opinion from Mr. Casebeer.[2]

### 6. Clark Ashworth, Ph.D.

Plaintiff challenges the reasons the ALJ provided for giving little weight to the opinion from Clark Ashworth, Ph.D. ECF No. 15 at 15. Plaintiff contends Dr. Ashworth's opinion is entitled to the most weight because it is the most recent. Also, Plaintiff argues that the ALJ's reliance on "social pleasantries" as evidence of conflict with objective test results is error. ECF No. 15 at 15.

On November 18, 2011, Dr. Ashworth examined Plaintiff and completed a Psychological/Psychiatric Evaluation. Tr. 437-40. He described Plaintiff as "polite, friendly, cooperative, disclosing." Tr. 439. Dr. Ashworth reported that Plaintiff's MMPI responses suggest a "man who is unsociable and afraid of emotional involvement, depression, unusual physical complaints, anxiety with post-traumatic quality and tension, resentfulness and suspicion of others, somatization and significant discomfort in social situations." Tr. 440. Dr. Ashworth opined that the MMPI results were valid, and he detected no evidence of malingering during the MSE. Tr. 439-40.

The ALJ gave some weight to Dr. Ashworth's opinion from November 18, 2011. Tr. 28. The ALJ observed that Dr. Ashworth's comments support a finding of not disabled. Tr. 28. Specifically, the ALJ noted that Plaintiff's MMPI test results suggested that Plaintiff was unsociable and had severe difficulty in interacting with people, but those findings were contrasted by Dr. Ashworth's experience with Plaintiff as polite, friendly, and forthcoming. Tr. 28. The ALJ

---

[2]The Court notes that while the ALJ did not rely upon this reason, Mr. Casebeer is an "other" medical source, and the ALJ properly gave greater weight to Dr. Maeda, an accepted medical source. See 20 C.F.R. §§ 404.1527, 416.927 (ALJ should give more weight to the opinion of an acceptable medical source than that of an "other source").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

concluded that the observations and objective evidence reported by Dr. Ashworth was consistent with Plaintiff's RFC.  Tr. 28.

In arguing that the ALJ erred by giving too little weight to Dr. Ashworth's opinion, Plaintiff asserts "[t]he most recent medical opinion is the most probative," and cites *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).  However, *Young* does not stand for such a broad proposition.  Instead, the *Young* court noted that "[w]here a claimant's condition is progressively deteriorating, the most recent medical report is the most probative." *Young*, 803 F.2d at 968.  In this case, as in *Young,* "it is far from clear that [Plaintiff's] condition was progressively deteriorating." *Id.*  Plaintiff does not advance an argument that Plaintiff's condition was deteriorating, and as discussed above, the evidence revealed his depression was improving with medication.

Plaintiff also asserts that it is error to rely upon "simple social pleasantries" to establish an inconsistency with objective record evidence, and he cites *Micus v. Bowen,* 979 F.2d 602, 606 (7th Cir. 1992).   In *Micus*, the ALJ discredited the claimant's complaints of pain, fatigue and nausea based upon claimant's "positive, cheerful attitude" reflected in her repeated responses to treating doctors asserting that she "felt good." *Micus*, 979 F.2d at 606.  The Seventh Circuit concluded that the ALJ erred by relying up the claimant's statements that she felt good "because there is neither an analysis of these statements' relevance nor an analysis of objective criteria for determining disability in spite of what is described as her positive, cheerful attitude." *Id.*

The present facts are distinguishable.  The ALJ noted that the results of Plaintiff's MMPI described a person who would experience significant difficulty presenting as "polite, friendly, cooperative, disclosing." Tr. 439.  Because the MMPI results and Plaintiff's affect during the exam were contradictory, the ALJ was entitled to resolve the contradiction.  *See Thomas*, 278 F.3d 947, 954 (9th Cir. 2002).  The ALJ did not err.

**C.    GAF Scores** [3]

Plaintiff complains that the ALJ erred by not fully considering the GAF score assessed by Dr. Thompson, Mr. Brucklier and Dr. Ashworth. ECF No. 15 at 15-16. The Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. *See* Diagnostic and Statistical Manual of Mental Disorders, DSM-IV,[4] 30-32 (4th ed. 1994). An ALJ has no obligation to credit or even consider GAF scores in the disability determination. See 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (GAF scale does not have a direct correlation to the severity requirements in SSA mental disorders listings.); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score is not essential to RFC accuracy).

The ALJ need not credit GAF scores because the scores include a significant number of non-medical factors, such as homelessness and legal troubles, that do not necessarily translate into work-related functional impairments, and the scores reflect the "clinician's judgment of the individual's overall level of functioning." DSM-IV 32-33. In other words, a GAF score encompasses psychological, social and occupational functioning, but the GAF score is not meant to be a conclusive medical assessment of overall functioning. *Id.* Because the ALJ need not consider the GAF score in determining an RFC, Plaintiff's contention that the ALJ erred by ignoring the GAF scores from various providers is unpersuasive.

---

[3] Plaintiff raises the identical issue that the ALJ erred by failing to account for GAF scores assessed by Dr. Thompson, Mr. Brucklier and Dr. Ashworth, and because the identical analysis applies to all contentions, the issue is addressed as one.

[4] The 2013 DSM–V dropped the use of the GAF. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. 2013).

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 16,** is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15,** is **DENIED**.

The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendant, and **CLOSE** this file.

DATED November 24, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE